| | |
|---|---|
| SCVNGR, INC., d/b/a LevelUp | )<br>)<br>) |
| Plaintiff, | ) Civil Action No.: 13-cv-12418-DJC<br>) |
| v. | )<br>) |
| eCHARGE LICENSING, LLC, | )<br>) |
| Defendant. | )<br>) |

## eCHARGE LICENSING'S MEMORANDUM IN
## OPPOSITION TO LEVELUP'S MOTION TO STAY

### INTRODUCTION

LevelUp is the plaintiff. But having filed this malicious action against eCharge Licensing ("eCharge"), and with dismissal and transfer motions now pending, it now seeks a stay of the very lawsuit it just filed. Equity does not support a stay, for many reasons.

LevelUp is now using this lawsuit as a launching pad to attack eCharge in the public arena. For example, LevelUp disclosed a transcript of a November 6, 2013 "Press Conference." In that press conference, its CEO, Seth Priestbach, denounced eCharge's patent assertions as "illegal" and "extortive." (Dkt. No. 30-6, at 4).[1] Mr. Priestbach used the fact that LevelUp filed this declaratory-judgment lawsuit to bolster its attacks. *Id.* ("[S]o we sort of took the proactive measure to send a message back and say: 'Hey, neither of us want to be involved in a lawsuit, but we are going to protect our rights to the fullest extent of the law.'"). Mr. Priestbach's smear campaign is especially remarkable, since he apparently destroyed eCharge's initial 2012 notice of infringement – a document that LevelUp now claims constituted a threat of litigation. (Dkt. No.

---

[1] The comments in the cited exhibit refer to eCharge even though not mentioned by name, because eCharge is the only entity meeting the description in the question Mr. Priestbach answered – a party whom LevelUp sued at the end of September.

7-10 (admitting that the notice-of-infringment was not in LevelUp's files); Dkt. No. 29 at 4 (construing the notice as a "threat of litigation"); Dkt. No. 7-11 (transmittal to LevelUp of 2012 FedEx delivery confirmation)).

When eCharge refused to be bullied by this infringer, LevelUp's CEO constructed this lawsuit as the centerpiece of a public relations program. LevelUp has used the lawsuit, among other ways, to prop up out-of-court allegations of criminal activity. To stay the proceedings would only allow LevelUp's attacks through allegations of "bad faith" patent assertions and "extortion" to reverberate without consequence. eCharge has a right to vindicate its reputation by exposing the spurious allegations of LevelUp's lawsuit. Moreover, while LevelUp's request for a stay is unwarranted, it should not even be considered before ruling on eCharge's dismissal and transfer motions.

Even putting aside the shenanigans and ulterior motives behind LevelUp's lawsuit, purely on the merits of this somewhat strange request,[2] LevelUp rejected the only criteria under which a stay would make any sense. LevelUp is quick to highlight that eCharge recently agreed to another infringer's request to stay proceedings in the related Illinois case of *eCharge Licensing, LLC v. Square, Inc.* (Case No. 13-cv-06445, N.D. Ill.). But there, Square was not the plaintiff, and a stay will be judicially efficient in that case. In the Illinois case, defendant Square sought *inter partes* review of a subset of the patents involved here (three of the eight). USPTO proceedings directly involve *all* of the patents being litigated in the Illinois suit. But here, five of the eight patents are not involved. More importantly, under 35 U.S.C. §§ 315(e)(2) and 318(a), Square will be bound by the outcome of those USPTO proceedings. In effect, the stay in the Illinois case reflects the reality that, if the USPTO initiates proceedings, substantially *all* patent validity litigation will be

---
[2] A plaintiff's request to stay its own case is odd when it could simply request a voluntary dismissal. There are no statute of limitations issues in play, and such dismissals, unless this Court states otherwise, are without prejudice. *See* Fed. R. Civ. P. 41(a)(2).

conducted in the USPTO and both sides are bound by the outcome. In contrast here, LevelUp refuses proposals to create the same effect. LevelUp did not agree to be bound by the outcome of the same USPTO proceedings, even though it argues that their existence alone justifies a stay.[3] Similarly, LevelUp rejected proposals to move these proceedings to Chicago where a single judge might preside over future *Markman* claim construction proceedings, thus eliminating all risk of inconsistent decisions.

In short, LevelUp seeks to have it both ways. It invokes federal court proceedings as a sword to defame eCharge and to dissuade future infringement claimants from invoking their patent rights against LevelUp.[4] But it does not want to allow eCharge any chance to clear its name. It also wants to ride the coattails of Square's USPTO activities, just in case they end up invalidating three of the eight patents. But it refuses to make the outcome of USPTO proceedings a two-way street, and would force the Court to re-try validity even after the USPTO holds the patents valid. All of this, and it invites procedures whereby two different courts might issue inconsistent patent decisions.

For these and the following reasons, LevelUp's motion to stay these proceedings should be denied. Indeed the Court should not even consider a stay until it has addressed all of eCharge's currently pending dismissal and transfer motions.

**BACKGROUND**

On August 16, 2013, counsel for eCharge wrote to LevelUp's CEO Seth Priebatsch. (Dkt. 7-9). That August 16 letter referred back to a letter sent a year earlier (August 2, 2012), to which

---

[3] As the party initiating a declaratory judgment lawsuit against a patentee, LevelUp is statutorily barred from itself filing for *inter partes* review. 35 U.S.C. § 315(a)(1).
[4] LevelUp has a pattern of going to the press to boast about how aggressively it fights patent infringement accusations. *See* Greenspoon Decl., Exhibit A, LevelUp press release in an unrelated matter.

3

LevelUp had never responded. Both letters included detailed claim charts, which described with specificity how LevelUp infringed certain eCharge patents, and invited discussions relating to a possible resolution of the matter. (Id.). Both the August 2, 2012, letter (naming five infringed patents) and August 16, 2013, letter (naming a sixth newly-issued patent) invited discussions on the merits of the infringement issue and possible licensing of the patents.

In a September 2, 2013 letter signed by CEO Priebatsch, LevelUp declined to discuss the facts supporting its non-infringement contentions. (Dkt. No. 7-10). The September 2 letter did not explain any rationale for non-infringement. It did, however, state that LevelUp searched its files and had no record of receiving the August 2, 2012, infringement notice.

On September 19, 2013, eCharge responded by email. (Dkt. 7-11). The email resupplied CEO Priestbatsch with the August 2, 2012, letter and claim charts, as well as the FedEx signature confirmation showing its actual receipt at LevelUp in 2012. (Id.). eCharge's email again invited discussion and a business meeting, but expressed concern about LevelUp's failure to supply any reasons for its non-infringement position other than a conclusory denial. The eCharge email stated, "I am sure you understand the difficulty of accepting conclusions without reasons." (Id.).

LevelUp's only response to eCharge's September 19, 2013 email requesting a meeting and further discussion was to bring an eighteen-count Complaint on September 30, 2013, the first seventeen counts of which are for a declaratory judgment of noninfringement, unenforceability and invalidity of eight United States patents exclusively licensed to eCharge. The eighteenth count alleges that eCharge's private Illinois-based communications with LevelUp's CEO (two letters and one email) violate Sections 2 and 11 of the Massachusetts unfair and deceptive trade practices act, Chapter 93A, and therefore subject eCharge to unspecified tort liability. LevelUp filed a First Amended Complaint on October 8, 2013, pleading the same count but adding makeweight allegations to position itself for eCharge's personal jurisdiction motion.

4

The claims are so conclusory, and are brought in such an obviously incorrect forum, that eCharge has filed motions to dismiss based on the lack of personal jurisdiction and on the insufficiency of the allegations (Dkt. Nos. 9-12).

LevelUp's papers so far in this case are replete with *ad hominem* attacks – calling patent licensing companies "patent trolls." This alone would alone justify rejecting any LevelUp request for relief. *In the Matter of United Shoe Machinery Corp.*, 276 F.2d 77, 80 (1st Cir. 1960) (denying motion "for the reason that it contains uncalled for ad hominem argument"). Informed commentators (including two former Directors of the United States Patent and Trademark Office) have denounced the use of the "patent troll" *ad hominen*. *See* Addendum A to this brief (quoting numerous authorities who denounce use of the unhelpful "troll" epithet). There is no uniform definition of the term. eCharge does not fit the Wikipedia definition (Greenspoon Decl., Exhibit B), since it is a "licensing agent[] that offer[s] enforcement and negotiation services on behalf of patent owners." LevelUp is correct to observe that eCharge's principal Anthony O. Brown was labeled many years ago in the media as the "original patent troll." (Dkt. No. 29, at 1; Dkt. No. 32, at 1, 10 n.2). But the fact that a media outlet seized on the pejorative does not justify LevelUp's use of uncalled for *ad hominem* attacks in a federal court brief, or its use to describe eCharge's legitimate licensing services to its inventor Mr. Cooper.

Having used these proceedings to attack eCharge's integrity in both in-court and out-of-court statements, LevelUp now moves for a stay of its own case. eCharge opposes.

**ARGUMENT**

If LevelUp wanted to avail itself of the "streamlined, but complete adversarial challenge to the validity of a patent based on prior art patents and printed publications" under the America Invents Act (Dkt. No. 32, at 8), it could have done so *without* filing the present suit. The America Invents Act differentiates between alleged infringers who file declaratory judgment actions (like LevelUp), and those who do not (like Square). Under 35 U.S.C. § 315(a), a declaratory judgment plaintiff is prohibited from petitioning for, or becoming a real party in interest in, *inter partes* review at the USPTO. LevelUp chose its mode of attack. It filed a malicious and defamatory lawsuit, called a press conference to celebrate it, and launched accusations (both in-court and out-of-court) that eCharge's business model constitutes involvement in criminal activity (namely, extortion). (Dkt. No. 3-6, at 4; Dkt. No. 29, at 2-3, 14, 16-17, 19, 21, 23, 26-29, 31-34, 37).

Stays are sometimes appropriate. Indeed after careful consideration, eCharge did agree that a stay in the Illinois *Square* case advanced judicial efficiency. But each case has its own equities that must be evaluated on a individual basis. The reasons for a stay in the Illinois case included unique factors not present here, including:

1. The estoppel effect would go both ways (statutory estoppel against Square if the results favor eCharge, and collateral estoppel against eCharge if the results favor Square), creating judicial efficiencies;

2. Square did not launch defamatory attacks against eCharge that required negation, either by invoking state unfair competition laws to allege "bad faith" in litigation papers, or by convening press conferences to brand eCharge an "extortionist" as part of a public relations smear to dissuade patent claimants;

3. *All* of the patent claims asserted in the Illinois case would potentially be adjudicated in the USPTO, further creating judicial efficiencies; and

4. Square was a defendant, not a plaintiff.

Here, none of these factors applies to LevelUp's request.

1. LevelUp categorically refuses, even in its stay motion, to be bound by the USPTO outcome if it benefits eCharge;

2. LevelUp is using this litigation as part of a larger campaign to defame eCharge, requiring vindication of eCharge's reputation through the court process;

3. *Most* of the patents asserted by LevelUp will not be addressed in Square's *inter partes* review proceeding (even if ever "initiated"); and

4. LevelUp is the plaintiff, not a defendant, having chosen the court system over the USPTO when it decided to attack the eCharge portfolio and eCharge itself.

Even a cursory survey of relevant cases shows that courts regularly deny requests to stay litigation pending *inter partes* review, particularly prior to any decision on "institution." *See, e.g.*, *Endotach LLC v. Cook Med. Inc.*, 2014 U.S. Dist. LEXIS 10061 (S.D. Ind. Jan. 28, 2014); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2014 U.S. Dist. LEXIS 4025 (N.D. Cal. Jan. 13, 2014); *Ultratec, Inc. & Captel, Inc. v. Sorenson Communs., Inc.*, 2013 U.S. Dist. LEXIS 162459 (W.D. Wis. Nov. 14, 2013); *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, 2013 U.S. Dist. LEXIS 162521 (N.D. Cal. Nov. 13, 2013); *U.S. Nutraceuticals LLC v. Cyanotech Corp.*, 2013 U.S. Dist. LEXIS 163057 (M.D. Fla. Oct. 15, 2013); *P&G v. Team Techs., Inc.*, 2013 U.S. Dist. LEXIS 128949 (S.D. Ohio Sept. 10, 2013); *Dane Techs., Inc. v. Gatekeeper Sys., Inc.*, 2013 U.S. Dist. LEXIS 117718 (D. Minn. Aug. 20, 2013); *Trs. of Boston Univ. v. Everlight Elecs. Co., Ltd.*, 2013 U.S. Dist. LEXIS 96916 (D. Mass. July 11, 2013); *Davol, Inc. v. Atrium Med. Corp.*, 2013 U.S. Dist. LEXIS 84533 (D. Del. June 17, 2013); *Kowalski v. Anova Food, LLC*, 2013 U.S. Dist. LEXIS 129445 (D. Haw. June 14, 2013); *One StockDuq Holdings, LLC v. Becton*, 2013 U.S. Dist. LEXIS 129446 (W.D. Tenn. May 6, 2013); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028

(C.D. Cal. 2013); *Everlight Elecs. Co. v. Nichia Corp.*, 2013 U.S. Dist. LEXIS 61666 (E.D. Mich. Apr. 30, 2013).

*P&G v. Team Techs., Inc.* exemplifies why courts around the country deny stays like the one that LevelUp requests:

> In view of this administrative framework, it seems clear that a stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for inter partes review was filed in the USPTO. All in all, a petition can be pending before the USPTO for up to six months before the agency decides to "initiate" an inter partes review. This six months is a kind of limbo that requires the court and the parties to wait while the USPTO makes its decision. If it chooses not to proceed, then this action will have been left languishing on the Court's docket with no discovery, no positioning of the parties on claim construction, and no dispositive motions. Put simply, the parties will be no closer to trial in a type of case that requires "early substantive disclosure" in order to efficiently manage discovery and pretrial motion practice. *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-cv-1727-Orl-37DAB, 2013 U.S. Dist. LEXIS 67790, ECF No. 36 at 4-5 (M.D. Fla. May 13, 2013). A number of other district courts have reached the same conclusion.

*P&G*, 2013 U.S. Dist. LEXIS 128949, at *9 (denying stay) (some internal marks omitted). Courts deny such stays even after the USPTO decides to "institute" proceedings. *E.g.*, *Verinata Health*, 2014 U.S. Dist. LEXIS 4025, at *6-*9 (denying stay after "institution" because potential "simplification" factor diminished: after appeals, "it may still be years" before USPTO decisions are "truly final," and cases involving multiple patents are less likely to be resolved by USPTO actions); *Everlight Elecs. Co.*, 2013 U.S. Dist. LEXIS 61666, at *23-*28 (denying stay after "institution" because early stage of litigation weighs against stay for reason that speed of USPTO proceedings means court "can incorporate the PTO's decision" into its judgment; minimal "simplification" because litigation issues remain that will not be addressed in USPTO proceedings). Nothing about LevelUp's stay request merits a different outcome. Here, the Court should deny LevelUp its requested stay since a stay would unfairly prejudice eCharge, and a stay will not simplify the issues before the Court.

### A. A Stay Would Unfairly Prejudice eCharge, the Non-Movant

The first factor a court considers is whether a stay would unfairly prejudice the non-movant. Here, a stay would unfairly prejudice eCharge. LevelUp's motion completely ignores that it and its CEO have used court process to launch defamatory attacks against eCharge. This is primarily embodied in Count XVIII of the Amended Complaint. These attacks allege "bad faith" patent assertions, and "extortion." Thus LevelUp alleges that eCharge's business model (licensing intellectual property) is criminal in nature. Such attacks hamper eCharge's licensing activities with third parties, and put a cloud on its integrity. Mr. Priestbach has made matters worse by repeating and amplifying these attacks in the press, where he uses the existence of this litigation in an attempt to lend credibility to them. (Dkt. No. 30-6, at 4).

eCharge has the right to defend itself and its business model against these attacks, without LevelUp's desired delay. It has the right to show that its infringement assertions have merit, show that it has not acted in bad faith or otherwise committed any crime in sending two private letters and one private email to LevelUp notifying it of infringement, and show that LevelUp (who has nearly admitted to spoliation) is a willful infringer. The Court should not permit LevelUp to use a stay to delay the consequences to LevelUp of its drive-by assaults on eCharge's reputation.

More directly, to the extent that LevelUp requests a stay to take effect *before* the Court considers eCharge's motions to dismiss and/or transfer, the prejudice is even more palpable. eCharge acted swiftly against LevelUp's meritless suit. Now that LevelUp has seen eCharge's dismissal and transfer arguments, it asks the Court to wait indefinitely before acting on them. To tie the Court's hands on the possible eve of eCharge's vindication is the very essence of prejudice, particularly as to issues unrelated to any potential proceedings before the USPTO.

### B. A Stay Would Not Likely Simplify The Issues in this Case

Where there are substantial differences in the issues before the USPTO and the issues before the Court in an infringement suit, staying the infringement suit in favor of the USPTO proceedings does not simplify the issues. *See, e.g., Softview, LLC v. Apple, Inc.*, 2012 U.S. Dist. LEXIS 104677, at \*9-\*11 (D. Del. July 26, 2012). When a party to litigation refuses to be bound by the decisions of the USPTO, a stay is disfavored because the likelihood that issues will be simplified is greatly diminished. Rather, because the litigants do not agree to be bound, the proceedings are more likely duplicative and wasteful. *Id.*, at \*11 ("[T]he limited scope of the []defendants' willingness to be bound by the outcome of the reexamination proceedings disfavors a stay."). As in *Softview*, LevelUp does not agree to be bound by the outcome of the USPTO proceedings. To bring about true simplification of the issues (rather than pure delay based on an infringer's hope that delay will favor it), courts do not hesitate to condition stays of litigation pending *inter partes* review on the movant's agreement to be bound.

For example, in *Evolutionary Intelligence, LLC. v. Yelp Inc.*, 2013 U.S. Dist. LEXIS 178547 (N.D. Cal. Dec. 18, 2013), the patentee-plaintiff had argued against a stay on the ground that Yelp would not be bound. In response, Yelp agreed to be bound: "Yelp agrees to be estopped from litigating any invalidity claims that Apple raised or could have raised in its IPR petitions regarding the '683 Patent." *Id.* at \*19-\*20, citing *Pi-Net Int'l, Inc. v. Focus Business Bank*, 2013 U.S. Dist. LEXIS 118723, at \*5 (N.D. Cal. Aug. 16, 2013) (granting stay on condition that "defendants agree[] to be bound by an estoppel similar to the provisions of Section 315(e) such that they may not assert in this suit that the claim is invalid on any ground that [a third party] raised or reasonably could have raised during the IPR").[5] The *Evolutionary Intelligence* court

---

[5] The court narrowed the agreement-condition in *Pi-Net* in its later decision reported at 2013 U.S. Dist. LEXIS 147863 (N.D. Cal. Oct. 3, 2013), to eliminate the "reasonably could have raised"

concluded that its "stay is conditioned on Yelp's agreement that it shall be estopped from litigating any invalidity claims that Apple raised or could have raised in its IPR petitions regarding the '683 Patent." *Id.* at *31. Only by submitting a validity issue completely to the USPTO, not one-sidedly so that issues will need to be re-tried when the patentee wins, can a stay begin to make sense.

LevelUp raises only hollow arguments against this simple and powerful logic. First, it speculates that by agreeing to be bound in order to secure a stay, it would become a "party in interest . . . which would provide grounds to terminate Square's pending IPR petition." (Dkt. No. 32, at 14 n.5). The USPTO has already rejected this argument. In *Chi Mei Innolux Corp. v. Semiconductor Energy Lab. Co., Ltd.*, Case No. IPR2013-00028 (Paper No. 14, 21 March 2013) (Greenspoon Decl., Exhibit C), a patentee asked the Patent Trial and Appeal Board to treat as a "real party in interest" certain litigation-parties who had joined a motion to stay. *Id.* at 7-8. To secure that stay, those third parties agreed to be bound by the USPTO outcome. The USPTO denied any significance to the agreement to be bound, on the ground that the actual issue to be analyzed for determining whether an entity is a "party in interest" is "control and/or funding" of the Petitioner's efforts. Here, LevelUp categorically denies that it lends control or funding to Square. (Dkt. No. 32, at 14). The USPTO would therefore not consider LevelUp to be a real party in interest to Square's Petition by LevelUp agreeing to be bound.[6]

Second, LevelUp places undue emphasis on the obvious fact that, even without an agreement to be bound, some narrowing of the litigation issues would occur if certain patent

---

part of the condition. But the more recent *Evolutionary Intelligence* case imposes the full scope of the condition.

[6] The USPTO decision aptly concludes by observing, "[i]t is likely that no such stay would have been granted without all defendants agreeing to the estoppel provision. Without additional evidence, we cannot take this to establish control and/or funding." *Chi Mei Innolux*, Greenspoon Decl., Exhibit C, at 8. Thus, even the USPTO expects this Court to deny LevelUp's motion under current circumstances.

claims do not survive USPTO proceedings. (Dkt. No. 32, at 15). That is a myopic perspective, since it distracts from the full picture that the Court needs to see. Issues would hypothetically narrow only (1) for three of the eight patents LevelUp brought into this case, and (2) only if Square wins at the USPTO. For five of the eight patents, there will be no legal effect. Under 35 U.S.C. § 282, the validity of every patent claim must be evaluated independently of every other patent claim.[7] And, eCharge believes that it will likely prevail at the USPTO.

Third, LevelUp argues that USPTO proceedings "will address and narrow numerous issues concerning the validity of the patents, including the scope of the patent claims and the teachings of key prior art." (Dkt. No. 32, at 15). This is an overstatement. The USPTO applies the "broadest reasonable construction" criteria to patent claim construction, which is broader than (and not the same as) the claim construction criteria required of U.S. District Courts. *See* 37 C.F.R. § 42.104(b)(3) (USPTO applies "broadest reasonable construction"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2009 U.S. Dist. LEXIS 118320, *50-*51 (D. Del. Dec. 18, 2009) ("There are important differences, however, between claim construction before the PTO and claim construction before an Article III Court. A PTO Examiner construing claims is required to do so applying the broadest reasonable construction consistent with the specification. Courts do not apply this 'broadest reasonable construction' rule.") (citations omitted). While some USPTO activities might provide some nonbinding insights, it is pure speculation to argue that they are insights that the Court would not glean for itself.

---

[7] LevelUp's charts on pages 3-5 of its brief backfire for LevelUp. LevelUp intends them to show the overlap in issues among patents subject to, and not subject to, the Square USPTO proceedings. However, they in fact highlight the quantity of claim limitations the USPTO will **not** have before it under any circumstances (*e.g.*, "plurality of accounts" in the '094 patent, selectability of "multiple accounts" in the '495 patent). LevelUp also completely ignores the '890 patent (Dkt. No. 7-2), asserted against LevelUp but not subject to Square's Petitions, whose claims 17-18 and 25-26 are written very differently from the ones subject to Square's Petitions (including limitations directed to "data from which optical special patterns may be reconstructed," in "a programmable optical spatial pattern creating device.").

LevelUp's fourth argument is baffling, coming from LevelUp, as that point disfavors a stay. It argues, "whether or not estoppel applies, the validity of any claim surviving an IPR ***always*** remains to be litigated by a court," pointing out that *inter partes* review does not reach grounds for invalidity under 35 U.S.C. §§ 101 or 112. (Dkt. No. 32, at 15, emphasis LevelUp's). LevelUp thus unwittingly concedes the inability of USPTO proceedings to simplify significant validity issues facing the Court. *See Cooper Notification, Inc. v. Twitter, Inc.*, 2010 U.S. Dist. LEXIS 131385, at *9 (D. Del. Dec. 13, 2010) (denying stay because USPTO would not reach all validity issues). And, invalidity comprises only eight of the eighteen counts. Only three counts (Counts XI, XV and XVI) allege invalidity of the patents that might enter *inter partes* review. Therefore, fifteen of LevelUp's eighteen counts (including a claim of "unfair and deceptive trade practices") would remain unaddressed by any USPTO outcome.

### C.     LevelUp Points to No Inconsistency

LevelUp's final argument for a stay seeks to find an inconsistency within eCharge's efforts to compromise the present motion. LevelUp is correct that eCharge described the criteria under which it believed a stay would make sense. eCharge suggested, in addition to LevelUp's agreement to be bound, that the true dispute (liability under the patents, minus the abusive Chapter 93A count) be moved to the federal courts in Chicago, for potential consolidation with the Square case. LevelUp points out that "if this Court were to transfer this action to Chicago . . ., eCharge is apparently prepared to agree that a stay is appropriate as to LevelUp's claims (and eCharge's claims against LevelUp)." (Dkt. No. 32, at 17). LevelUp not only asserts that eCharge's compromise proposal "cannot be reconciled" with eCharge's opposition to a stay if the case remains in this Court. It brashly asserts that this aspect of eCharge's compromise proposal "expose[s] eCharge's strategy of asserting disingenuous and bad faith positions in this dispute, and as a general method of doing business." (Dkt. No. 32, at 17).

LevelUp reaches far, but points to no actual inconsistency. eCharge's position has been consistent. If the patent liability aspects of this case go to Chicago, the Chapter 93A claim is dropped, and LevelUp agrees to be bound, a stay will, on balance, make sense to eCharge. eCharge's willingness to compromise with LevelUp and moot multiple issues now pending before the Court hardly leads to the conclusions LevelUp contends. A single judge would then preside over all related actions, personal jurisdiction issues would be mooted, and the consolidated case would benefit from a single case management plan and *Markman* decision. If this case stays in Boston, no inter-judicial efficiencies would result from locking its schedule and pace to that of the *Square* Illinois case.

## CONCLUSION

For the foregoing reasons, the Court should deny LevelUp's extraordinary request – by a plaintiff no less – to stay the whole of the present litigation, based on LevelUp's unfounded hope that three of the eighteen counts of the Amended Complaint might be supported by the results of USPTO action on a nonparty's (Square's) *inter partes* review. A stay would lend fuel to LevelUp's unfair use of this litigation to launch drive-by defamatory attacks, and would not likely simplify the issues in a manner that would justify the delay. If LevelUp is so concerned about moving ahead with a lawsuit that it filed, then it ought to seek voluntary dismissal under Rule 41.

If any stay were considered, that consideration should wait until and unless the Court denies eCharge's now-pending dismissal and transfer motions. At a minimum, any stay should be limited to only a narrow set of counts (as discussed above), and should include a condition that no stay takes effect unless LevelUp agrees to be bound by the outcome of the USPTO proceedings.

Dated: February 6, 2014                                   Respectfully submitted,

                                                          By:   /s/ Robert P. Greenspoon
                                                          Robert P. Greenspoon
                                                          William W. Flachsbart

FLACHSBART & GREENSPOON, LLC
333 North Michigan Avenue, Ste 2700
Chicago, IL  60601
T:  312-551-9500
F:  312-551-9501
(Pro hac vice)

Jonathan D. Sweet, Esq. (BBO#634755)
Sweet Law LLC
One Constitution Center – Suite 300
Boston, MA 02129
T:  617-242-9100
F:  617-886-0100
jon@attorneysweet.com

**Attorneys for Defendant**
**eCharge Licensing, LLC**

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for the plaintiff via CM/ECF on February 6, 2014.

_/s/ Robert P. Greenspoon___
Robert P. Greenspoon